IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**LIFEBIO, INC.,**

        **Plaintiff,**

  v.

**EVA GARLAND CONSULTING, LLC,**

        **Defendant.**

Civil Action 2:21-cv-722
Judge Edmund A. Sargus
Magistrate Judge Kimberly A. Jolson

**OPINION AND ORDER**

This matter is before the Court regarding a discovery dispute. Plaintiff asks the Court to strike an email produced in discovery from the exhibits filed in support of Defendant's Motion for Summary Judgment (Docs. 71, 86) and in response to Plaintiff's Motion for Summary Judgment (Doc. 81). (Doc. 94). For the following reasons, Plaintiff's request is **DENIED**.

I.    **BACKGROUND**

Plaintiff filed this lawsuit in state court on January 12, 2021, alleging breach of contract and breach of good faith and fair dealing. (Doc. 1-1). Defendant removed the action to this Court on February 19, 2021, based upon its diversity jurisdiction. (*See* Doc. 1). At the heart of the current discovery dispute is the parties' Stipulated Protective Order from May 4, 2021, concerning the limitations and restrictions for documents produced during the course of the litigation. (Doc. 13). Relevant here, the Stipulated Protective Order sets forth a procedure for remedying production of privileged material, known as a clawback agreement. (*Id.* at 7–9). Neither party disputes the clawback agreement's contents or validity.

Discovery proceeded with the Stipulated Protective Order in effect. And, on February 24, 2022, Plaintiff produced "voluminous" materials to Defendant. (Doc. 94 at 2). Shortly thereafter, on March 16, 2022, Defendant's counsel notified Plaintiff's counsel via email of her belief that

privileged material had been produced. (Doc. 93-1 at 2). Plaintiff's counsel did not respond, and Defendant's counsel sent another email eight days later, on March 24, 2022, asking for Plaintiff's input on whether the material was privileged. (*Id.* at 3). A paralegal working with Plaintiff's counsel responded the next day, writing that counsel would "get back with [Defendant's counsel] soon" regarding "the protective-order." (*Id*. at 5). After three days of silence, Defendant's counsel again emailed Plaintiff's counsel, asking that Plaintiff "please let [Defendant's counsel] know [its] position with regard to [its] recent document production that appears to contain potentially privileged information." (*Id.* at 8). Still, no answer. So Defendant's counsel tried again on March 31, 2022. (*Id.* at 11).

Once again, Plaintiff did not respond. Five days later, on April 5, 2022, Defendant's counsel was even more direct:

> I have not heard back from you with regard to LifeBio's recent document production that may contain potentially privileged information. If I do not hear back from you before the depositions of LifeBio's representatives, I will presume these documents are not privileged.

(*Id.* at 13).

Finally, on April 8, 2022, a paralegal for Plaintiff's counsel responded, saying that counsel was "going through the documents" and would "be in touch." (Doc. 93-1 at 19). Then, on April 11, 2022, Plaintiff's counsel provided Defendant's counsel with file names that he asserted contained privileged communications. (*Id.* at 18). On April 13, 2022, Defendant asked that the parties confer to discuss "the potentially privileged materials that you produced, as these materials are now discoverable and privilege has been waived in light of your refusal and/or failure to timely respond to our inquiries regarding same in accordance with the [stipulated protective order]." (*Id.* at 17). Plaintiff's counsel did not respond to the request for conferral.

2

Defendant's counsel proceeded to use the at-issue email during the deposition of Jeff Sanders on May 5, 2022—fifty days after Plaintiff first learned it had produced privileged documents. Defendant's counsel read the email into the record at the deposition, asking Mr. Sanders if the email "speaks for itself." (Doc. 71 at 72, 101). Plaintiff's counsel responded, saying

> We'll stipulate for the record that this is an email that was sent from Beth Sanders to Josh Borean and it speaks for itself. And everything in that email, it says what it says. We'll stipulate to that. If you need Jeff's confirmation on that, Susan, after we've stipulated to what's on the page here --

(*Id.*). Defendant's counsel followed with two more questions, at which time Plaintiff's counsel said, "[f]or the record, I want to object to this exhibit. This appears to be attorney/client privileged information that may have been accidentally turned over." (*Id.*). Defendant's counsel informed Plaintiff's counsel that "[f]or the record, one, the exhibit now has been stipulated to. Number two, if it has, it was – that privilege has been waived." (*Id.*). And Plaintiff's counsel subsequently responded, "Okay. All right." (*Id.*). Defendant's counsel again used the at-issue email in deposing Lisbeth Sanders on July 22, 2022—128 days after Defendant first informed Plaintiff of the privilege issue. (Doc. 71 at 2). Plaintiff's counsel objected to the document "and any testimony associated with this document. But for purposes of moving this forward, you can ask her – I'm going to permit at this point in time some questions on this document." (*Id.* at 20). Questioning about the email proceeded.

Many months passed. Then Defendant used the email in its brief in support of its Motion for Summary Judgment (Doc. 64) and included the email as an exhibit to the Motion for Summary Judgment (*see* Doc. 71). Both filed on January 19, 2023—309 days after Plaintiff received notice of the privilege issue. Plaintiff filed its own Motion for Summary Judgment on the same day (Doc. 67) and responded to Defendant's Motion on February 9, 2023 (Doc. 82). But Plaintiff did not raise any objection to Defendant's use of the at-issue email in its Motion for Summary Judgment

3

with the Court. So, Defendant used the at-issue email in its response to Plaintiff's Motion for Summary Judgment. (Doc. 81 at 4). And again, Plaintiff did not raise a privilege concern with the Court. Instead, it replied to Defendant's Response in Opposition on February 23, 2023 (Doc. 87). Finally, on March 10, 2023, Plaintiff's counsel emailed chambers, asking for a discovery conference to address production of privileged communications—despite Defendant having used the privileged material (1) approximately ten months prior in its deposition of Jeff Sanders (*see* Doc. 71 at 72), (2) approximately eight months prior in its deposition of Lisbeth Sanders (*see id.* at 2), and (3) fifty days prior in its Motion for Summary Judgment filing (*see* Doc. 64).

Upon notice of the instant discovery dispute, the Court held a telephonic status conference on March 14, 2023, during which it ordered the parties to file letter briefing on the issue. The parties complied (Docs. 93, 94), and the dispute is ripe for resolution.

## II. DISCUSSION

Naturally, the Court begins with a discussion of attorney-client privilege. As a threshold matter, the Court must confirm that the email at issue is privileged. *See Great-W. Life & Annuity Ins. Co. v. Am. Econ. Ins. Co.*, No. 2:11-CV-02082-APG, 2013 WL 5332410, at *7 (D. Nev. Sept. 23, 2013); *see also Multiquip, Inc. v. Water Mgmt. Sys. LLC*, 2009 WL 4261214, at *3 (D. Idaho Nov. 23, 2009) ("[W]hen deciding whether inadvertently-produced documents waives any privilege, a two-step analysis must be done. First, it must be determined if the material in question is actually privileged[.]"). Ohio law governs the applicability of the attorney-client privilege because this case is before this Court pursuant to its diversity jurisdiction. *See Inhalation Plastics, Inc. v. Medex Cardio-Pulmonary, Inc.*, No. 2:07-CV-116, 2012 WL 3731483, at *1 (S.D. Ohio Aug. 28, 2012) (citing Fed. R. Evid. 501).

Under Ohio law, the attorney-client privilege "protects against any dissemination of information obtained in the confidential relationship." *MA Equip. Leasing I, L.L.C. v. Tilton*, 2012-Ohio-4668, ¶ 19, 980 N.E.2d 1072, 1079 (Ohio Ct. App. 2012) (internal quotations omitted). Neither party disputes that the documents at issue contain privileged material. (*See* Docs. 93, 94). And the Court agrees.

But the parties hotly contest whether attorney-client privilege has been waived. Attorney-client privilege is not absolute, and "if a client wishes to preserve the privilege, it must treat the confidentiality of attorney-client communications like jewels—if not crown jewels." *In re Sealed Case*, 877 F.2d 976, 980 (D.C. Cir. 1989). In other words, it may be waived by "behavior by the client or [] [its] attorney [] that is inconsistent with the continued maintenance of that privilege." *Trustees of Elec. Workers Local No. 26 Pension Trust Fund v. Trust Fund Advisors, Inc.*, 266 F.R.D. 1, 11 (D.D.C. 2010). Federal law governs this question. *See Burnett v. Ford Motor Co.*, No. 3:13-CV-14207, 2015 WL 1650439, at *6 (S.D. W.Va. Apr. 14, 2015) ("While the applicability of the privilege is governed by state law, waiver of the privilege is a matter of federal law."); Fed. R. Evid. 502(f). More specifically, Rule 502 of the Federal Rule of Evidence guides the analysis. *See Blankenship v. Superior Controls, Inc.*, No. 13-12386, 2014 WL 12659921, at *2 (E.D. Mich. Nov. 25, 2014).

### A. Waiver and Federal Rule of Evidence 502

Rule 502 was designed "to provide a predictable, uniform set of standards under which parties can determine the consequences of a disclosure of a communication or information covered by the attorney-client privilege or work product protection[,]" codifying the privilege and how parties may waive it. Fed. R. Evid. 502 advisory committee's explanatory note. The aim of the Rule is to serve the overriding interest of justice, *see Inhalation Plastics, Inc. v. Medex Cardio-*

5

*Pulmonary, Inc.*, No. 2:07-CV-116, 2012 WL 3731483, at *3 (S.D. Ohio Aug. 28, 2012) (citations omitted), by preserving the privilege for those who take steps to protect it, while waiving the privilege for those who neglect it. Attorney-client privilege—blatant in its name—is a privilege, not a right. The Rule underscores the notion by detailing what actions must be taken to protect the privilege.

> The Rule states, in relevant part:
>
> **(b) Inadvertent Disclosure.** When made in a federal proceeding or to a federal office or agency, the disclosure does not operate as a waiver in a federal or state proceeding if:
>
> > **(1)** the disclosure is inadvertent;
> > **(2)** the holder of the privilege or protection took reasonable steps to prevent disclosure; and
> > **(3)** the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

Fed. R. Evid. 502(b). Thus, a party may waive the attorney-client privilege "by conduct which implies a waiver of the privilege or a consent to disclosure," under 502(b). *Marshall v. Belmont Cty. Bd. of Comm'rs*, No. 2:13-CV-966, 2014 WL 202055, at *3 (S.D. Ohio Jan. 17, 2014) (citing *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999)); *see also First Tech. Capital, Inc. v. JPMorgan Chase Bank, N.A.*, No. 5:12-CV-289-KSF-REW, 2013 WL 7800409, at *2 (E.D. Ky. Dec. 10, 2013).

Here, there is no evidence that the email at issue was intentionally or purposefully produced, meaning Rule 502(b) applies. Under Rule 502(b), an unintentional disclosure constitutes a waiver unless all three sub-elements are met. *See N. Am. Rescue Prod., Inc. v. Bound Tree Med., LLC*, No. 2:08-CV-101, 2010 WL 1873291, at *8 (S.D. Ohio May 10, 2010) (citing Fed. R. Evid. 502(b)). In other words, (1) the disclosure must be inadvertent, (2) the privilege holder must have taken reasonable steps to prevent disclosure, and (3) the holder must have

promptly taken reasonable steps to rectify the error in order to preserve the privilege. Fed. R. Evid. 502(b).

### B. Interplay of Rule 502 and Clawback Agreements

Along with subsection 502(b), it is also necessary to understand the language of Rule 502(e) when analyzing this dispute. *Great-W. Life & Annuity Ins. Co.*, 2013 WL 5332410, at *10 (noting that Rule 502(e) "provide[s] [an] important tool[] in the effort to effectuate the intent of Rule 502 as a whole"). The Rule states that "[a]n agreement on the effect of disclosure in a federal proceeding is binding only on the parties to the agreement, unless it is incorporated into a court order." Fed. R. Evid. 502(e). The advisory committee's note for Fed. R. Evid. 502(e) explains that this section "codifies the well-established proposition" that parties may agree "to limit the effect of waiver by disclosure between or among them." *See also Rajala v. McGuire Woods, LLP*, No. CIV.A. 08-2638-CM, 2010 WL 2949582, at *4 (D. Kan. July 22, 2010). These agreements limiting waiver, known as "clawback" provisions, "essentially 'undo' a document production and allow the return of documents that a party belatedly determines are protected by the attorney-client privilege or work product immunity." *Id.* (internal quotations omitted). As such, if a party does not follow the steps outlined in Rule 502(b) or otherwise agreed upon in a clawback provision, the privilege is waived.

In this case, the parties agreed:

c. if any document or ESI (including, without limitation, metadata) received by a party is on its face clearly subject to a legally recognizable privilege, immunity, or other right not to produce such information, the Receiving Party will promptly notify the Producing Entity in writing that it has discovered Protected Information, identify the Protected Information by Bates Number range, and return or sequester such Protected Information until the Producing Entity confirms whether it does indeed assert any privilege protecting this information. Once the Producing Entity asserts privilege over such Protected Information (as described in Subparagraph (e) below), the Receiving Party will return, sequester, or destroy all copies of such

>  Protected Information, along with any notes, abstracts or compilations of the content thereof, within ten (10) business days of notice from the Producing Entity;
>
>  d. upon the request of the Producing Entity, the Receiving Party will promptly disclose the names of any individuals who have read or have had access to the Protected Information;
>
>  e. if the Producing Entity intends to assert a claim of privilege or other protection over Protected Information identified by the receiving party, the Producing Entity will, within ten (10) business days of receiving the Receiving Party's written notification, inform the Receiving Party of such intention in writing and shall provide the Receiving Party with a log for such Protected Information that is consistent with the requirements of the Federal Rules of Civil Procedure, setting forth the basis for the claim of privilege, immunity or basis for non-disclosure, and in the event, if any portion of the Protected Information does not contain privileged or protected information, the Producing Entity shall also provide to the Receiving Party a redacted copy of the Protected Information that omits the information that the Producing Entity believes is subject to a claim of privilege, immunity or other protection[.]

(*Id.* at 7–8). While the United States Court of Appeals for the Sixth Circuit has yet to address how clawback agreements and Rule 502(b) interlace, the Court need not determine whether Rule 502(b) or the clawback agreement controls here because Plaintiff has waived privilege under both provisions.

### C. Plaintiff has waived privilege.

The attorney-client privilege is designed "to promote 'full and frank communications between attorneys and their clients[,] . . . thereby encourag[ing] observance of the law and aid[ing] in the administration of justice.'" *Guy v. United States Healthcare Corp.*, 154 F.R.D. 172, 177 (S.D. Ohio) (quoting *Commodity Futures Trading Comm'n. v. Weintraub*, 471 U.S. 343, 348 (1985)). As a result, it is the client, not the attorney, who holds the privilege. *See, e.g.*, *Fausek v. White*, 965 F.2d 126, 132 (6th Cir. 1992). Still, "as the legal expert, it is the attorney who is necessarily the guardian of the privilege." EDNA SELAN EPSTEIN, THE ATTORNEY-CLIENT PRIVILEGE AND THE WORK-PRODUCT DOCTRINE, Vol. I, at 7 (6th ed. 2017). That is, an attorney's decisions or actions that result in a waiver of the privilege will be valid, even if not authorized by

8

the client. *Id.*; *see also Hilton-Rorar v. State & Fed. Commc'ns Inc.*, No. 5:09-CV-01004, 2010 WL 1486916, at *5 (N.D. Ohio Apr. 13, 2010) (an "attorney may (and quite frequently does) [] waive the privilege on behalf of the client"). For that reason, it is an attorney's responsibility to protect the sanctity of the privilege on behalf of the client, and this Court is mindful of that responsibility when approaching the issue of waiver. After careful analysis, the Court finds that Plaintiff's counsel has failed to protect the sanctity of attorney-client privilege and, consequently, has waived privilege. This is true under both the clawback agreement and Rule 502(b).

    i.  **Failure to follow the procedure defined in the clawback agreement resulted in waiver.**

The Court turns first to the clawback agreement, particularly the parties' obligations when privileged documents are unintentionally produced. Rule 502(e) allows parties to define the steps necessary to protect privilege in the case of disclosure. That agreement has a "[c]ontrolling effect" on disclosure thereafter and is "binding" on the parties throughout the course of the litigation. Fed. R. Evid. 502(e). Simply put, "a clawback agreement is a contract[.]" *irth Sols., LLC v. Windstream Commc'ns LLC*, No. 2:16-CV-219, 2017 WL 3276021, at *13 (S.D. Ohio Aug. 2, 2017), *objections overruled*, No. 2:16-CV-219, 2018 WL 575911 (S.D. Ohio Jan. 26, 2018). And, as with any contract, there are consequences when a party fails to fulfill its obligations. Here, the parties defined the steps needed to protect privilege.

Most significantly, the parties agreed that a producing party, after receiving notice of potential inadvertent disclosure, would have ten business days in which to: (1) assert a claim for privilege in writing; (2) produce a privilege log setting forth the basis of privilege for each privileged document; and (3) produce redacted versions of the documents to the extent that only portions of them were privileged. (Doc. 13 at 8). So, the parties defined the necessary steps to preserve the sanctity of the privilege in the event of an inadvertent production.

The record shows that Plaintiff did not follow the agreed-upon procedure. Though Defendant's counsel made several attempts to obtain Plaintiff's position on privilege, (*see* Docs. 93-1 at 2 (March 16, 2022 email); 93-1 at 3 (March 24, 2022 email); 93-1 at 8 (March 31, 2022 email); 93-1 at 13 (April 5, 2022 email)), Plaintiff's counsel did not respond until April 8, 2022—twenty-three days after Defendant's counsel first gave notice of potential inadvertent disclosure (Doc. 93-1 at 19). That alone constitutes waiver. Plaintiff agreed it would assert a claim of privilege within ten business days of notice but waited far longer to say anything in response to the notice. Under the plain language of the clawback agreement, Plaintiff waived privilege by failing to respond within ten business days because that is how the parties defined what was required to protect the sanctity of attorney-client privilege.

And, though the analysis may simply end there, the Court notes that Plaintiff's failure to abide by the obligations of the clawback agreement ran deeper. When Plaintiff finally responded to Defendant's notice, it only represented it was "going through documents at this time[.]" (*Id.*). This falls far short of an assertion of privilege in writing—let alone the production of a companion privilege log and redacted versions of the privileged documents—all of which the parties had previously agreed would be necessary to protect privilege. (Doc. 13 at 8). In fact, it was not until days later, on April 11, 2022, that Plaintiff even identified documents within the production that purportedly contained privileged communications. (Doc. 93-1 at 18). And still, Plaintiff produced no privilege log setting forth the basis for privilege as to each document. Plaintiff's failure to protect the privilege—through means which Plaintiff itself agreed should have controlling effect—is thorough and unequivocal.

Plaintiff urges the Court to ignore the plain language of the clawback agreement for two reasons. First, Plaintiff claims it was not obligated to assert privilege within ten days because

Defendant's counsel enlarged the time to assert privilege.  (*See* Doc. 94 at 3).  In her April 5, 2022 email, Defendant's counsel wrote:  "If [Defendant's counsel] do not hear back from [Plaintiff's counsel] before the depositions of [Plaintiff's] representatives, [Defendant's counsel] will presume these documents are not privileged."  (Doc. 93-1 at 13).  Plaintiff says this changed the terms of the clawback agreement and made the waiver provision inapplicable.

The Court finds this argument without merit.  Most importantly, Defendant's counsel never said she was forfeiting her client's rights under the clawback agreement.  To the contrary, it appears that counsel was attempting to confirm whether Plaintiff considered the communications privileged at all.  By April 5, well beyond the ten-business-day window, Plaintiff had already waived privilege.  But, before Defendant could assert waiver, it had to first understand whether Plaintiff would (belatedly) assert privilege.  If, however, Plaintiff never asserted privilege, Defendant would have no reason to concern itself with waiver before using the documents as it pleased.  And, as described above, even if the timeframe to assert privilege had been enlarged, Plaintiff still did not get the clawback agreement right.  A privilege log was never produced.

Second, Plaintiff says that Defendant cannot use the privileged emails because Defendant failed to comply with the Federal Rules of Civil Procedure by "not 'promptly return[ing], sequester[ing], or destroy[ing] the specific information' . . . using the information despite the claim being unresolved and [Plaintiff] maintaining privilege.  Nor did [Defendant] attempt to resolve the dispute[ ] but rather unilaterally deemed privilege waived and submitted the email with its summary judgment briefs."  (Doc. 94 at 4–5 (citing Fed. Civ. R. 26(B)(8)(b)).  Again, the Court disagrees.

Under Rule 26(B)(8)(b), which is partially incorporated into the parties' clawback agreement (*see* Doc. 13 at 7–9), Defendant was obligated to return, sequester, or destroy the

11

privileged material once Plaintiff made a claim of privilege. Fed. Civ. R. 26(B)(8)(b). But, as described above, Plaintiff did not make a claim of privilege until after privilege had already been waived. Instead, Plaintiff's counsel ignored several emails about the privilege issue from Defendant's counsel, before finally providing only the file names of documents which purportedly contained privileged communications, with no companion privilege log. More still, Plaintiff's counsel never corrected Defendant's counsel when they said privilege was waived and later that the at-issue email was stipulated to by Plaintiff's counsel. (*See* Docs. 93-1 at 17; 71 at 101). Under the circumstances, Defendant's counsel reasonably implied a waiver of privilege based on the conduct of Plaintiff's counsel. *See Marshall v. Belmont Cty. Bd. of Comm'rs*, No. 2:13-CV-966, 2014 WL 202055, at *3 (S.D. Ohio Jan. 17, 2014) (citing *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999)). It follows that Defendant had no further duty under Rule 26(B)(8)(b).

At base, the clawback agreement is a binding contract. The parties agreed that if a party was notified that potentially privileged materials had been disclosed, it would have ten business days to assert privilege: in writing, with a privilege log, and with redacted documents, if appropriate. The Court approved those terms and signed an order to that effect. The parties did not agree that privilege would be asserted if a party said they were in the process of reviewing the documents within twenty-three days of notice. They did not agree that an unspecific assertion of privilege after twenty-six days—with no accompanying privilege log—would be sufficient. They could have. In fact, if the ten-day timeframe was not workable for Plaintiff, it could have, through mutual agreement with Defendant, designed any plan it wanted for addressing inadvertent disclosure. What Plaintiff cannot do is unilaterally and retroactively alter the terms of its agreement with Defendant, long after discovery, long after disclosure, and long after waiver. The

ten-day response time was approved by all—Plaintiff, Defendant, and the Court. And it must be given effect. Under the plain language of the clawback agreement, Plaintiff waived privilege.

### ii. Failure to follow the Federal Rules of Evidence also resulted in waiver.

But even if there was no legally binding contract, Plaintiff still waived privilege. As described above, Federal Rule of Evidence 502(b) governs waiver in the case of inadvertent disclosure of privileged material. The requirements of Rule 502(b) can be superseded by a clawback agreement "only to the extent such an order or agreement provides concrete directives regarding each prong of Rule 502(b) i.e., (1) what constitutes inadvertence; (2) what precautionary measures are required; and (3) what the privilege holder's post-production responsibilities are to escape waiver." *irth Sols., LLC v. Windstream Commc'ns, LLC,* No. 2:16-CV-219, 2018 WL 575911, at *2 (S.D. Ohio Jan. 26, 2018) (internal quotation marks, alterations, emphasis, and case citations omitted).

Accordingly, if the clawback agreement provides insufficient guidance on how to analyze the circumstances of the inadvertent production, Rule 502's three-part test for waiver applies. Here, the Court finds the clawback agreement sufficiently detailed to determine issues of inadvertence and waiver, but—to indulge Plaintiff's argument that the clawback agreement is not binding—the Court will analyze the current dispute under Rule 502(b).

As previously discussed, there is no evidence of intentional disclosure, so the first element of the three-part test is satisfied. Regarding the second element—which requires that the privilege holder took reasonable steps to prevent disclosure—Plaintiff does not detail its steps to prevent the disclosure, only stating that "[Plaintiff] conducted a thorough review of the documents prior to production." (Doc. 94 at 2). This statement, without further explanation of what steps Plaintiff's counsel took in the review process, is ambiguous. Yet, the Court need not decide whether Plaintiff

13

has satisfied the second element because Plaintiff unambiguously failed the third element and waived privilege by not "promptly [taking] reasonable steps to rectify the error . . . ." Fed. R. Evid. 502(b)(3).

Beyond counsel's noncompliance with the clawback agreement, Plaintiff's counsel failed to protect the sanctity of the attorney-client privilege repeatedly, over a ten-month period:

- Plaintiff disclosed privileged documents on February 24, 2022 (Doc. 94 at 2) and has not told the Court what precautionary steps were taken to prevent disclosure of privileged materials.

- Plaintiff was informed of the disclosure on March 16, 2022 (Doc. 93-1 at 2) and did nothing with that information until April 11, 2022 (Doc. 94 at 3), after repeated prompting by Defendant (*see* Docs. 93-1 at 2 (March 16, 2022 email); 93-1 at 3 (March 24, 2022 email); 93-1 at 8 (March 28, 2022 email); 93-1 at 11 (March 31, 2022 email); 93-1 at 13 (April 5, 2022 email)). Plaintiff attempted to identify privileged documents through a screenshot of file names (Doc. 93-1 at 18), in lieu of using Bates numbers, despite admitting that the privileged documents were included in a "voluminous" production (*see* Doc. 94 at 2). And still Plaintiff did not expressly assert privilege over those documents.

- Two days later, on April 13, 2022, Defendant asked to confer with Plaintiff, because it perceived that privilege had been waived. (Doc. 93-1 at 17). Plaintiff never responded.

- Twenty-two days later, Plaintiff's counsel allowed its witness to answer questions about the privileged emails in a deposition. (Doc. 71 at 101). And, after the deposition, Plaintiff's counsel never conferred with Defendant's counsel or raised the issue with the Court.

- Seventy-eight days later, Plaintiff's counsel allowed the CEO of LifeBio to answer questions about the at-issue emails again in her deposition. (Doc. 71 at 20). And, again, Plaintiff did not bring the matter to the Court.

- On January 19, 2023, 181 days after the deposition, Defendant used the at-issue emails in its summary judgment briefing. (Docs. 63, 64). Plaintiff did not object.

- On February 9, 2023, Defendant used the at-issue emails in its response to Plaintiff's Motion for Summary Judgment. (Doc. 81). Plaintiff did not object.

- On February 23, 2023, Defendant again used the at-issue emails in its reply to Plaintiff's response in opposition to Defendant's Motion for Summary Judgment. (Doc. 86). Plaintiff did not object.

- On March 10, 2023, Plaintiff's counsel emailed chambers and asked the Court to hold a discovery conference "to address a privileged document inadvertently produced to

> [Defendant] in discovery." Plaintiff's counsel did not ask the Court to seal the filings that included the privileged document or citations to it in any of his email correspondence with the Court.

- On March 14, 2023, the Court held a telephonic status conference to discuss the instant matter. At no point during the conference did Plaintiff's counsel ask the Court to seal any of the summary judgment briefing that references the privileged document. And Plaintiff has not requested such a seal since the conference. As such, filings that reference the at-issue email have been available on the public docket since their publication.

Plaintiff did not have a heavy burden to assert privilege but still failed to meet it, despite ample opportunity to do so. Instead, counsel for Plaintiff ignored five emails from Defendant's counsel about the at-issue documents (*see* Docs. 93-1 at 2 (March 16, 2022 email); 93-1 at 3 (March 24, 2022 email); 93-1 at 8 (March 28, 2022 email); 93-1 at 11 (March 31, 2022 email); 93-1 at 13 (April 5, 2022 email)), and allowed Defendant's counsel to use the at-issue documents in two depositions. At the deposition for Jeff Sanders, Plaintiff's counsel stipulated to the at-issue email, then objected to it, then agreed with Defendant's counsel that the email had been stipulated to. (Doc. 71 at 101). Then, Plaintiff's counsel allowed the deponent to answer questions about the email. (*Id.*). *See Certain Underwriters at Lloyd's, London v. Nat'l R.R. Passenger Corp.*, 218 F. Supp. 3d 197, 202 (E.D.N.Y. 2016) (finding that a party had not preserved privilege after objecting at a deposition but permitting questioning on the document) (citations omitted). The same thing happened at another deposition two month later. Plaintiff's counsel objected to the document but allowed questioning to proceed. (Doc. 71 at 20).

More still, counsel waited over 300 days (*see* Doc. 93-1 at 2)—after Defendant used the documents in a fully briefed summary judgment motion (Docs. 63, 86)—to attempt to clawback the documents, "long after the proverbial cat was out of the bag." *See Coorstek, Inc. v. Reiber*, No. CIVA08CV01133KMTCBS, 2010 WL 1332845, at *10 (D. Colo. Apr. 5, 2010). Put simply, nothing about Plaintiff's attempts to rectify this situation was attentive, diligent, or even "reasonable." Fed. R. Evid. 502(b)(3). Nor were they "prompt[]. . . ." *Id.*

15

Now, Plaintiff's counsel wants the Court to clawback not only the at-issue emails but the deposition testimony of two witnesses and Defendant's summary judgment briefing. In other words, Plaintiff wants the Court to protect the sanctity of attorney-client communications. But it was Plaintiff's obligation to treat the privilege like a crown jewel. Plaintiff continually failed to meet its obligations and, as a result, waived privilege.

### III.  CONCLUSION

For those reasons, this Court agrees with Defendant that Plaintiff's conduct waived the privilege. As such, Plaintiff's request to strike the at-issue email from the record is **DENIED**. Defendant is permitted to use the at-issue email in its Motion for Summary Judgment filings.

Lastly, per the Court's Order (Doc. 85), the parties are reminded of their obligation to make publicly available all documents the Court did not grant leave to file under seal. As such, the parties are **ORDERED** to file unsealed versions of all exhibits for which the Court did not previously grant leave to seal or redact **on or before May 11, 2023**.

IT IS SO ORDERED.


Date:  May 4, 2023                                             /s/ Kimberly A. Jolson
                                                               KIMBERLY A. JOLSON
                                                               UNITED STATES MAGISTRATE JUDGE